Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced and times will be as allotted to counsel. The case today is Bunth & Kong v. United States, appeal number 21-1319. Attorney Horowitz, please introduce yourself for the record and proceed with your argument. Good afternoon, Ethan Horowitz on behalf of the plaintiff appellant Bunth & Kong. As the court is likely aware, the appeal that brings us here today is yet another appeal concerning or challenging the legality of executive detention as to a non-citizen pursuant to the Immigration and Nationality Act. This particular challenge raised by Mr. Kong has taken the form of a federal tort claims act challenge as to the legality of his detention by the executive for approximately two months in the spring of 2018. As the court is also likely aware, the appeal that has brought us here today raises two issues which have been very familiar both to this court as well as the U.S. Supreme Court. The first issue being a jurisdictional issue related to what role any of the judiciary should play in the review of the legality of executive detention as to non-citizens under the Immigration and Nationality Act. The court below dismissed Mr. Kong's claims on jurisdictional grounds based on a reading of section 242G of the act stating that the federal court has no jurisdiction to review claims of unlawful detention to a non-citizen like Mr. Kong who has a final order of removal. The second issue being a merits question, although this issue wasn't addressed directly below, it was raised tangentially by the lower court. It's raised in this proceeding as an alternative basis for affirmance of the appeal and this issue has to do with burden. What is the burden that the executive must meet in order to justify the detention of a non-citizen pursuant to the act, a non-citizen like Mr. Kong? So if it pleases the court, I'll begin with the jurisdictional argument. Counsel, to help perhaps focus your argument on the jurisdictional question, let me pose this question to you. There's been a lot of attention in the briefing to the language of 1252G, the jurisdictional provision of the issue. What's the scope of arising from language attention to the references to decision or action by the attorney general? But I'm wondering, given what I understand to be another aspect of your argument, why that language matters at all? Because I understand you to be arguing that just as a categorical matter, claims arising out of detention, and I think you're referring to language we have in our Aguilar decision and in other decisions that you cite in the footnote in your brief. Those kind of detention issues as a class, as a category, are not subject to the jurisdictional bar. Do I understand your position correctly?  Well, I guess let me put it this way. Congress, I believe, intended to strip federal judicial review of what I would call run-of-the-mill detention decisions by the executive branch. There are certain types of detention in the execution of removal order that I think simply cannot be unlawful. To give you an example, if a noncitizen is ordered removed, Congress has required that the noncitizen be detained for 90 days. And then, as the Third Circuit has described it, kind of door-to-plane detention and removal. My understanding of 252G is that that type of detention, I guess unless there was some kind of clear constitutional violation, that would be off-limits for the court. But this notion of what the lower court did, which is equating all post-removal detention as executing removal order, I believe that goes too far. And that's really what my argument is driving at, that if all post-removal order detention is tantamount to execution of a removal order, then no noncitizen with a final removal order who's been detained would ever be able to raise a challenge to his or her detention by the executive branch. And I think that's problematic, if that answers your question. Yeah, well then, you seem to be making largely a policy argument there. So, you seem to be suggesting that the language of 1252G does remain relevant. And if that language is relevant, then why wasn't the decision to detain your client pursuant to an order of removal, why wasn't that decision to detain him an action that was taken by the Attorney General to execute the removal order? I think it becomes hard to argue that that language, action taken by the Attorney General, does not cover what was done here. So, how do you get around that? Well, I mean, I think the sense of what it means to execute a removal order, I think could be interpreted very broadly by the court or very narrowly. And I believe that execution of a removal order, at the very least, needs to be lawful steps that the executive can take to attempt to remove a noncitizen. And so, for example, if the executive branch were to drug a noncitizen and throw him in the back of a trunk and then spear him off onto an airplane, I don't think that would have been within the contemplation of Congress as execution of a removal order. Although, technically speaking, that is what the executive is trying to do. So, the notion is that unless the court is to interpret, execute a removal order so expansively as to effectively suspend the writ of habeas corpus, there needs to be some line drawing. And my argument is that line is that if we have a noncitizen who has been detained by the executive branch and that detention violates the Constitution, that detention violates a statute, that that type of conduct isn't the execution of a removal order. However, the executive dresses it up, but it is something different that can and must be reviewed by the judicial branch. So, let me ask you to turn, and I don't mean to foreclose further questions on this, but on the merits, I'm having a little trouble following the argument. As I understand it, he's subject to a fully effective removal order. He's then detained, but more than 90 days ago and they're not going to, they don't have a place to send him. So, they release him subject to supervision. It seems to be that there would come a point in time where if circumstances change such that they now can queue him up for removal, that they could detain him again. Correct, Your Honor. I'm sorry, go ahead. And so, the question is, was this subsequent detention in beginning in April of 2018, was that justified under the rationale that would have otherwise limited his prior detention to 90 days? And you seem to say that since the purpose of it wasn't to actually remove him, but to do an interview to see if the travel papers could be issued so that they could then remove him, but then the detention wasn't justified. I guess the way that I would think about it is that Mr. Kong, when he was released in 2000, was like any other detainee released on a conditional order, whether it be a parolee or probationer, that Mr. Kong had a liberty interest in being free from detention. And so, like any individual who has a liberty interest in being free from detention, as this court has ruled in Gonzales-Fuentes v. Molina, the government needed probable cause to re-detain him. And that probable cause needed to reflect the lawful basis pursuant to the Fifth Amendment that the government, some kind of factual basis tied to a lawful reason to detain him. Under the Immigration and Nationality Act, there are two reasons to detain a non-citizen. One is to prevent them from being a flight risk, and the second is if he or she is a danger. And the government hadn't done either. The district court cited CFR 241.13.1.2 that seems to refer to people like your client who had been let out under supervision, but now changed circumstances came along, so the removal was on the horizon, and so they re-detained him. What do you say about 241.13.1.2? Sure. So 241.13.1.2 seems to imply a procedure similar to a probable cause hearing for someone picked up on a pretrial criminal matter. Five minutes remaining. Five minutes. Thank you. The issue is that if the government is to claim changed circumstances as the basis for Mr. Kong's detention, it needs facts to support the basis. And then they detain him, and then 241.13.1.2 provides Mr. Kong with a probable cause hearing for him to contest that factual basis. The problem in this case is the government had no factual basis. The facts that the government relied on to detain Mr. Kong were a 16-year-old repatriation agreement that hadn't changed since the first years of Mr. Kong's detention. They had a questionnaire that Mr. Kong filled out that isn't in the record. They have the declaration of a government official saying, oh, we know what Cambodia is looking for. Trust us. And they have a hearsay statement from a government official saying that Cambodia issued a travel document. There are no facts to support the government's changed circumstances argument. Well, there's no requirement that hearsay statements can't be. I mean, if they have him removed, but then they release him within 90 days because Cambodia is not accepting anyone, and then they get indications that Cambodia may well accept him subject to an interview, why isn't that the type of changed circumstance that 241.13.1.2 takes into consideration? Because there's no probable cause to believe that Cambodia will repatriate Mr. Kong. You can't arrest someone, whether it be a non-citizen or someone suspected of committing a crime, based on the general idea that this person is in a class of persons that might be subject to detention. But this is someone who would have been subject to detention, but for the fact that it was not yet clear enough that he could be repatriated. And now that had changed. But actually, I would disagree, Your Honor. It still wasn't clear at the time that the government apprehended Mr. Kong that Cambodia would repatriate him. And again, I'm going to stand firm on this, that there were there were no facts specific to Mr. Kong. I mean, it would have been no different than if the government had rounded up all 1,900 post-removal order Cambodians at once, based on this idea that maybe Cambodia will repatriate them, maybe it won't. That is an executive overreach. What about the government's sites? I actually have two questions. I mean, the government cites a rather remarkable success rate with repatriation. Ninety-four out of a group of 95 were repatriated within the time frame that we're talking about. I mean, that's certainly... Now, I understand that those facts are not specific to your client, but that certainly suggests, it seems to me, a reasonable foreseeability that the travel documents will issue and that the government of Cambodia will accept his return. Why isn't that highly relevant? Well, I guess I would refer the court to Marilyn B. Pringle, which talks about the probable cause standard in detail. And probable cause isn't a numerical calculation. It's not, despite the name, a mechanical calculation. It's a question of reasonableness. And, you know, whether the government's... And I believe it's 80 percent. It was 94 out of 113 that the government had initially tagged for removal by the Cambodian government. But, again, 80 percent is an impressive rate. But 80 percent only matters if what the government's doing is reasonable. And I can't see how it's reasonable for the government to tell us that we believe Mr. Kong is likely to be repatriated with no facts other than he's Cambodian and this worked in the past. You know, there has to be some individual calculus, such as we have strong evidence of Mr. Kong's Cambodian nationality. Mr. Kong, you know, whatever facts that the government had in its possession, some at least needed to be specific to Mr. Kong. And that's the problem. Otherwise, there is no check on executive authority to detain scores and scores of people based on supposition. Maybe Cambodians... Let me ask you this. I mean, I found the District Court's decision a little bit confusing in this sense. It did get into compliance with Section 1231. But my understanding is that the compliance with 1231 is really a merits issue. And since the District Court had decided that it did not have subject matter jurisdiction over the challenge to the detention, why should it and why should we even get into that if the District Court was correct about the jurisdictional bar? I mean, that is a merits issue, correct? The 1231 issue? That is correct, Your Honor. If the court determines there's no jurisdiction, then the question of burden and merits is off the table. Right. Okay. All right. Let me ask you, aside from the Federal Courts Claim Act case, when your client was detained originally, you did not seek administrative review nor filed an injunction in federal court? You didn't do that, or your client didn't do that, correct? That's incorrect, Your Honor. When Mr. Kong was detained, my office filed a petition for writ of habeas corpus to free him from detention. And after eight weeks of detention, the government let him go. But I will add that when Mr. Kong filed his habeas corpus petition in May of 2018, the government's response was to raise Section 242G of the Immigration and Nationality Act and attempting to tell the District Court that it had no jurisdiction. And so that's the danger here. If the court reads Section 242G as expansively as I'm afraid that it may, the consequences aren't just to prevent Mr. Kong from pursuing his FTCA claim, but the government will also win a much bigger and much scarier battle, which is to prevent Mr. Kong from having filed a habeas corpus petition in the first place. Counsel, isn't there a... I think you raise an important point. I mean, the question of continuing habeas jurisdiction in the District Court is one thing. Liberty interests are at stake. The claim we're dealing with here, not to minimize it, is a damages action. And so even if the District Court retains habeas jurisdiction to deal with liberty issues, why does it follow that it would retain jurisdiction to deal with a damages action under the Federal Tort Claims Act? Would one necessarily follow from the other? Your Honor, I'm afraid so. I believe there's no reasoned way to wrestle with the text of Section 242G that would allow a jurist to come to the conclusion that an FTCA Act claim seeking damages for unlawful detention would be unreviewable, while at the same time allowing a court sitting in its habeas jurisdiction to determine that same detention to be unlawful and require release, which is really the crux of my jurisdictional argument. Section 242G specifically references the habeas statute as one of the jurisdictions being stripped. And so I don't believe that if the court rules that the Federal bench has no jurisdiction to review the legality of Mr. Kong's detention from a damages perspective, I see no way to cabin that and sticking to this text and also allow for habeas corpus review for detained aliens seeking to be free from unlawful executive detention. I'm sorry, Your Honor, I believe you're muted. If this were a habeas proceeding, wouldn't there be some interpretive presumptions that would be applicable to our construction of 1252G that would not be applicable here? I'm afraid that's not true. As the Supreme Court said in Clark v. Martinez, you can't pick and choose interpretive presumptions to change the meaning of a statute in different contexts. Yes, you are correct. Constitutional avoidance would and should prevent the court from construing 242G to prevent habeas corpus review. But then the court can't then turn around and pretend that those words have different meanings with respect to another claim. I think Clark v. Martinez foreclosed that because we have to stick to the text of the statute, however we're interpreting it, and the problem is that one necessarily follows the other. If there is habeas review, I'm afraid there must be review of all unlawful detention by the executive branch under the INA. So you may have brought the claims in the wrong order then? I wish I had a choice, but unfortunately the most important thing for my client was to get out of detention, which we succeeded in doing, and now we're trying to hold the government accountable retrospectively since the government was never taken to task in the habeas proceeding because of their voluntary release of Mr. Kong after the petition was filed. Okay, and one last question from my part. I'm looking at your brief. You're arguing that 8 CFR section 241.13 is unconstitutional, at least as applied to your client here, am I correct? I believe that 241.13 could have been constitutionally implemented, and here's how it would have worked. If the government believed that Mr. Kong was significantly likely to be removed in the reasonably foreseeable future, the executive office should have gone to a neutral administrative magistrate, presented the facts on which it had probable cause to detain Mr. Kong, such as Mr. Kong matches the profile of the types of Cambodians that the Cambodian government is repatriating, X, Y, and Z. A neutral magistrate would have signed off on the probable cause and issued a warrant, and the government would have detained Mr. Kong pursuant to a properly issued administrative warrant. At that time, pursuant to 241.13, Mr. Kong then would have had a chance to contest that probable cause determination. But Mr. Kong can't contest anything if there are no facts to contest, and that's really the problem with the way that the government is implementing 241.13. It's a good system, and it can be constitutional, but it must adhere to the requirements of probable cause to work, and that's what didn't happen here. And that would be your federal court's claim issue. It wasn't implemented constitutionally. It violated the way it was carried out, correct? That's correct, and oddly, when the government detained scores of Cambodians in 2017, they actually did what I described. They obtained warrants, they detained Cambodians, and they at least did the arrest what I believe to be in conformance with the probable cause standard. For some reason, inexplicably, when Mr. Kong was detained, no new warrant was issued, and the government was taking the position that a 1996 warrant was sufficient, which I think is a reach. So that's really, and again, unlawful arrest, unlawful imprisonment under Massachusetts law is simply an arrest or imprisonment that lacks probable cause. So yes, that is the basis of our FTCA, the first two points of that claim. You mentioned Massachusetts law. Sorry to drag this on, but this is an FTC claim. These are federal officials. How do you intend to hold them accountable under Massachusetts law? They're still acting pursuant to federal law. Wouldn't that claim not follow? Of course, Your Honor. So the Federal Tort Claims Act, the way that I understand that it works is that it allows the federal government to be subjected to state law under the same terms as a private person existing under state law. And so while it does seem odd to sue the federal government for false arrest, false imprisonment, the Massachusetts Civil Rights Act, that's what 28 U.S.C. 1346 contemplates, that I wouldn't be able to use the Federal Tort Claims Act to bring a federal cause of action. Okay, but it's based on state law, but you're not seeking separate state law claims, correct? Correct, Your Honor. It's all federal. Thank you. Are there any more questions for Mr. Horowitz? No. No. Thank you. Thank you, Your Honor. Thank you, Mr. Horowitz, at this time. If you could please mute your audio and your video. And, Attorney Piamonte, if you could introduce yourself on the record to begin. Good afternoon, and may it please the Court, Eve Piamonte on behalf of the United States. Your Honor, the District Court properly found in this case that it lacked jurisdiction to consider plaintiff's claims and that the jurisdiction was lacking because of the jurisdictional bar set out in 1252G. And this Court can look to, first, the statutory text of 1252G. The statutory text of 1252G includes both constitutional and statutory challenges that a plaintiff may make, and it states that no court has jurisdiction to hear causes or actions arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders. And I think the parties agree here that the heartland of plaintiff's claim lies in what actions the government took in executing his removal order. Excuse me, Counsel, I'd like to ask you about some language that appears in a prior decision of ours. It's the Aguilar decision that's referenced in the briefs. And in that decision, the panel says, and I understand, they're talking there about 1252B9, not the provision we're talking about here, but there is this broad statement that, and it's grounded in what is said to be the expressed intent of Congress, and that may be the critical point, but this is the statement that, in line with this prescription, a reference to a statement of Congress, we have held that the district courts retain jurisdiction over challenges to the legality of detention in the immigration context. There was a reference earlier to the fact that when the habeas proceedings were initiated here, even with respect to the habeas proceedings, the government took the position that the district court did not have jurisdiction to address that habeas claim. Is that the government's position that a habeas petition is not available in the district court to challenge the kind of detention that we had here? And if so, how is that position consistent with this language from Aguilar? That is not the government's position, Your Honor. The government, in the prior habeas case, I was not counsel for the government at that time, but there were a number of claims that were raised and a number of defenses that were raised. And the defense that 1252G precluded review of plaintiff's claim, to the best of my recollection, is consistent with the defense that the government makes here today, which is that if the action for which the plaintiff, in this case Mr. Kong, is complaining, is directly related to actions taken to commence a removal proceeding, it is barred by 1252G. However, habeas relief is available. Habeas claims are available to make other claims, such as the legality of his detention. But here, in this case, it's not a habeas case that was brought. Here, this is a Federal Tort Claims Act case that was brought. And so that's the distinguishing factor, at least in my mind, as between the two cases. The plaintiff here is left with the claims that he brought, and it was a three-count complaint in the district court. The first two complaints were Federal Tort Claims Act claims, one for false arrest, one for false imprisonment. The third claim, despite the representation today that it was not a state law claim, the third count of the complaint was a Massachusetts Civil Rights Act claim, which is a state law constitutional claim. So that is the difference. And if you look at the substance, I believe also in Aguilar, this court cautioned against creative labeling, because that is one means by which you might avoid the jurisdictional stripping language of 1252G. So by claiming here that this plaintiff is challenging the lawfulness of his detention, if the court took that on its face, plaintiff will be allowed to evade the jurisdiction stripping provisions of 1252G, because when you look at the substance of his claims, which is what this court urged in Aguilar, you see that the substance of his claims are his arrest and detention, which are actions taken to effectuate his removal. And so while plaintiff asks for a very broad reading and claims that the district court made a very broad decision, it really is a fact-specific inquiry on the facts and circumstances of this case. What concerns me is... You talk about artful pleading. I mean, he clearly is, yes, this is a torte claim, but it is based on a challenge to the lawfulness of the detention. I mean, the claim is that he was even understanding what 1231 permits in the way of detention for somebody who was subject to removal order. The claim is that the government did not comply with the statutory requirements, did not have a basis for detaining him. Once detained, did not accord him the rights that are available to him under the statute notice of the remedies available to him. The chance to challenge his detention administratively, none of that happened. So it is a challenge, is it not, to the lawfulness of his detention in the form of a torte claims act? A challenge to the lawfulness of his detention. And I'm trying to break this down, so I apologize for the hesitation. You seem to concede that habeas jurisdiction is preserved for a challenge to the lawfulness of the detention. If that is true, why wouldn't that concession also apply to a torte claims act that is also based on the lawfulness of his detention? Obviously the remedies are very different, but they are both premised on the same type of challenge, that he is being detained unlawfully. So why would your concession on habeas apply here? The federal torte claims act is set up to hold the government liable as a private person would be held liable under the same facts and circumstances under state law. When you look at the merits of the federal torte claims act, the 1252G says if the person is attacking a decision by the attorney general, whether it's to commence proceedings, adjudicate cases, or execute removal orders, there is no jurisdiction. So to the extent that the claim raised by the plaintiff, however he names it, challenges the authority of the attorney general to execute his removal order, it is expressly barred by 1252G. If, however, plaintiff brought a habeas claim challenging the constitutionality of his detention, then it may be, those habeas claims are allowed. But the elements of the federal torte claims act don't match the requirements of the constitutional review of the habeas proceeding. And the habeas proceedings are what are directly afforded review by 1252G. You're giving a very broad reading to 1252G. I mean, I look at the second one there, which is adjudicate cases. No court shall have jurisdiction to hear any claim arising from a decision or action by the attorney general to adjudicate cases. We review all the time adjudications of cases by the AG. We don't review the decision to adjudicate the case. It doesn't, that same thinking, apply to execute. We review acts taken in the course of execution, but we don't review the decision to execute. That's sort of question one. And question two is, isn't detention sort of a big, obvious category in the whole removal statute regime? I mean, I look at 1231A entitled Detention, Release, and Removal. And since detention is omitted from 1252G, it would seem sort of odd to think that Congress intended not to skip that obvious whole category and instead just fit it in silently under executing removal orders. So those are my two questions. As to the first question... Four minutes remaining. Four minutes. As to the first question, the execution, if a plaintiff challenges his removal order and this court reviews the decision to remove someone, it's through a petition of review and through a specially channeled provision allowing for this court's review. The decision to execute a removal order is barred by 1252G. Similarly, and so that to me is the distinction, if that answers this court's question, as to question number one. Excuse me, counsel, I don't think you've answered the question. He specifically says he is not challenging the decision to execute. And I think that is a point that is implicit in Judge Kayada's question. That is not what's at issue. It's the detention that followed in the wake of the decision to execute the removal order that seems to be at issue here. And the detention here was one of the steps in the effectuation of that removal order. In other words, it isn't just plain detention. Detention was one in a series of steps leading up to his removal, which is why it is the whole picture. And I think as the district court found, starting with the step to call the plaintiff in to fill out a questionnaire in order to obtain travel documents from the government of Cambodia. If we review, and I understand I'm barraging you with questions, and forgive me for that, and I'll repeat them if it helps. But if we take your reading, it would also seem to me that the decision to commence proceedings is a step in the course of executing removal orders. Virtually everything could be swallowed into that. And yet Congress didn't think they were because it listed them. So the execution of the removal order, they listed commencing proceedings, adjudicate cases, and execution of removal order. And the execution of the removal order contemplates a series of steps.  You know, I don't know how better to answer that question except to say the courts to have considered this issue looked at some courts like Foster from the Fifth Circuit interpreted 1252G very, very broadly. And said it's any cause of claim arising from the decision or action of the Attorney General regardless. And then looped in claims of excessive force and denial of due process. And none of those claims are listed within 1252G. More recently, the Ninth Circuit has said 1252G has to be afforded a narrow reading, lest all of these other claims. But even using the most narrow of readings, plaintiff's claim fails because this isn't a case where he is, for instance, claiming some constitutional violation that occurred within his detention. Suppose they kept him for eight months. Because they want to make sure he's ready to go out the door as soon as Cambodia signs off. Clearly the Supreme Court has said, I think that's no good. Well, you would say we couldn't even review it. I wouldn't because he could review that in habeas. Because it's the constitutionality of his detention. But how would in that proceeding, how would the action we're reviewing not be executing removal? Whereas in this case, it would be executing removal. Because that would be a habeas claim for which it's precisely review is allowed under 1252G. He would bring a habeas petition claiming that he had been detained beyond the presumptively reasonable period of time in Zadvydas. And that his removal was not reasonably likely in the foreseeable future. And that claim is excerpted or specifically provided for in 1252G. That's time. Can I just add, do you have any idea why the petitioner here was arrested? What was the, I mean, there's no suggestion that he was trying to evade the process. It was just going about his daily life. He had done everything that he was required to do to participate in the process. And then, after 18 years, he's suddenly arrested. Why? Why would that be done? I mean, on its face, that seems quite gratuitous and completely unnecessary for the execution of the removal order. Why? Why was this done? Do you have any idea? Was there any explanation offered? Please, go ahead. There are some declarations in the record as to all of the events that led up to his arrest and detention. But under both the statute, 1231, and the regulations, 8 CFR, it permits a revocation of an order of supervision in order to remove somebody from the United States. And so, once the Cambodian government, once Mr. Kong was put on the list of candidates for whom the Cambodian government would offer an interview, he still had an outstanding order of removal. And he still had the warrant of deportation. And under both section 1231 and the regulations, the government, ICE, could revoke that order of supervision, take him, and detain him, then send him to that interview with the Cambodian government. He was released after that interview. So, it's nothing that he did. It was just the changed circumstances relating to the willingness of the government of Cambodia to engage in the repatriation process. Is that correct? Right. That in combination, the changed circumstances, which was the repatriation that began in 2002, and then the reasonable likelihood of removal in the foreseeable future. Those combinations, which the court articulated in 8 CFR, is what caused ICE to then act on both its statutory and regulatory authority. Let me ask you one question. Assume, for the sake of argument, that we were to determine that the court has jurisdiction, that there's no impediment for us to go to merits of the Federal Courts Claim Act. And I see in your brief, you argue that even in that event, there's no due process violation. And, of course, you look under the Federal Courts Claim Act to Massachusetts law. But if you could briefly recap why you understand that still the case would have to be dismissed even on the merits. Sure, Your Honor. If the court assumed to have, even looking on the merits for the false arrest and false imprisonment claims, the statutory and regulatory authority permitted the government to act as it did. And, therefore, because under the elements of both false arrest and false imprisonment in Massachusetts, the government did have a privilege and could act as it acted in taking him into custody. And, therefore, his false arrest and false imprisonment claims fail. The due process claims are raised only under the Mass Civil Rights Act claims. And counsel mentioned that he's not pursuing any state law claims. It's just for purposes of the Federal Courts Claim Act. It's incorporated. Said that, I'm just going by what the complaint reads. And that's where all of these due process violations sit is in the Mass Civil Rights Act claims that he brought. In that case, you don't reach the merits. And this court doesn't need to reach the merits because the United States cannot be held liable for constitutional violations under the Mass Civil Rights Act. It hasn't waived its sovereign immunity for those claims, nor can constitutional violations be made against the United States. And let me just one final question. What if the court were to understand that in a Massachusetts case, the application of the statute and regulation were unconstitutional? Would the plaintiff have a Federal Courts Claim Act claim for due process? He has not pled a Federal Torts. No, because Federal Torts Act are grounded in negligence and not the Constitution, not a constitutional violation. So there are certain elements that he would be required to meet for his false arrest or false imprisonment claims. Maybe if it were a habeas due process violation, we might be having a different discussion. But under the claims as they have been pled and raised and decided by the district court, the government's answer is no. Thank you. Counsel, you filed a notice, a clarification notice, making clear what portion of Section 1231 you were relying upon. Was the district court, the district court was not aware of that clarification when it made its decision. Is that correct? It had a different understanding of how you were proceeding at that time. Is that correct? I don't know if it had a different understanding. I don't I don't know the understanding that it had. But in reading that, you did not in clarification that you presented us, you did not present to the district court. Is that correct? That's correct, Your Honor. OK. All right. Thank you. And so could you clarify what precise statutory language are you relying on for a detention that goes beyond 90 days after the beginning of the period of removal? So for the detention at issue in this case, the 2018 detention, the government is relying upon Section 1231 A6, which is the discretionary detention statute. Thank you. If the court has no further questions, the government would rest on the arguments made in its briefing. Thank you. Thank you. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.